UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT T. BRUEGGE, Trustee in the Matter of Anthony Clow, Debtor, and ANTHONY CLOW, Individually,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY and METROPOLITAN CASUALTY INSURANCE COMPANY,<br><br>　　　　Defendants. | Case No. 13-cv-1256-JPG-DGW |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for summary judgment filed by defendant Metropolitan Casualty Insurance Company ("MCIC") (Docs. 31 & 32). MCIC seeks summary judgment on Counts III and IV, the only two claims remaining in this case. Plaintiffs Robert T. Bruegge, as trustee of the bankruptcy estate of Anthony Clow, and Clow, individually, have responded to the motion (Docs. 35 & 36).

**I.      Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

**II.     Facts**

All parties agree that MCIC issued a homeowners insurance policy number 026412311-0 ("Policy") to Clow, a resident of Richland County, Illinois.  The Policy covered personal property damage and loss due to fire.  The Policy limit for personal property loss was $56,600 and for loss of use was $14,150.[1]  The Policy also contained a condition regarding "concealment or fraud":

> If any person defined as you conceals or misrepresents any material fact or circumstance or makes any material false statement or engages in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss, no coverage is provided under this policy to any person defined as you.

Policy at M-1, ¶ 2 (Doc. 32-1 at 35).

In July 2012, Clow filed a Chapter 7 bankruptcy petition and the required schedules (Case No. 12-60313-lkg) which he swore under penalty of perjury were true and accurate to the best of his knowledge.  Attached as part of the petition was a personal property Schedule B listing personal property in the amount of $3,550, which included $400 in household goods, $200 in clothing, $150 in firearms, a $100 computer, a $50 homemade boat and $50 in tools.  Clow claims he arrived at these values with his bankruptcy attorney by estimating "either five or ten cents on the dollar," Clow Dep. at 40 (Doc. 32-2 at 41), that is, estimating one-tenth or one-twentieth of an item's actual value.  Clow claims now that he owned personal property in excess of that listed on his Schedule B and that the representations on the Schedule B were false.  In September 2012, the Chapter 7 Trustee reported the estate had $3,550 in assets and no non-exempt property for distribution to creditors.  In November 2012, the Bankruptcy Court discharged Clow's debts of $77,186.  Since the time he filed his bankruptcy petition, Clow was unemployed and had

---

[1]     The briefs and exhibits reference various amounts as the Policy limits, and the Court has been unable to locate the Declarations page of the Policy in any of the exhibits.  Because the actual Policy limits are immaterial to the resolution of this motion, for simplicity's sake, the Court states here the limits pled in the Complaint.

2

minimal, if any, income.

Several months later and during the Policy period, on January 30, 2013, Clow's rental home burned down and destroyed or damaged the personal property inside. Clow filed a claim with MCIC with a sworn statement that he lost personal property with an actual cash value ("ACV") of roughly $125,469 in the fire. The statement included an 18-page personal property inventory of the property he claims to have lost, handwritten by Clow and signed on each page, as well as his estimate of the value of each item. The inventory included some personal property he had included in the $950 valuation in his bankruptcy Schedule B (household goods, clothing, firearms, a computer, a boat and tools); the other personal property on his Schedule B was not destroyed by the fire (prepaid rent and automobiles). Pursuant to an MCIC claims adjustor's instructions, Clow obtained the values he listed on the inventory by looking to see the prices on items for sale on the internet (*e.g.*, e-bay) and in retail stores (*e.g.*, Wal-Mart). In his search, he did not distinguish between the prices of new or used items. Clow wrote the values in a column labeled for the ACV of the lost property, although he did not understand what "ACV" meant. Clow states that he obtained some items listed in the inventory after his bankruptcy filing by buying them at garage sales or getting them for free from people who were going to throw them away, but he could not identify any specific item obtained in this manner between his bankruptcy filing and the fire. He also stated he owned a substantial number of items on the inventory at the time of his bankruptcy, although he failed to include values for them on the Schedule B in his bankruptcy petition. The items he owned in July 2012 but failed to include in his bankruptcy schedule included furniture, major appliances, a television, a piano, jewelry, tools and other smaller items, not all of which he could specifically remember.

In MCIC's processing of Clow's claim, its claims adjustor prepared a claim summary showing the ACV of property Clow claimed to have lost as approximately $50,126, and

calculating a settlement amount within the policy limits based on that valuation.  In the adjustor's analysis, for each item listed by Clow, she took Clow's estimate or researched the price of comparable new items, and subtracted depreciation where appropriate to arrive at an ACV.  In essence, she treated Clow's estimates as replacement values and converted them into ACVs.  Nevertheless, MCIC declined to cover the loss because it believed that Clow failed to satisfy the "concealment or fraud" condition in the Policy.  MCIC believes Clow's statement of the value of his property loss was a misrepresentation of a material fact and/or a materially false statement such that the Policy coverage was voided.

Clow and the Chapter 7 Trustee in his bankruptcy case filed this lawsuit bringing causes of action for breach of the insurance contract and for unreasonable failure to pay an insurance claim in violation of 215 ILCS 5/155(1).  They seek $70,150, close to the total policy limits for personal property loss and loss of use.  Relying on Clow's sworn statement of the value of his personal property in his Schedule B, which was substantially lower than his sworn statement of the value of his personal property in his insurance claim, MCIC asks the Court to grant it summary judgment on the basis of its affirmative defenses – judicial estoppel and the "concealment or fraud" condition for coverage.

**III.   Analysis**

Unlike most insurance coverage disputes, this case does not turn on interpretation of the insurance policy.  In those kinds of cases, interpretation of the policy, even an ambiguous policy, is a matter of law for the Court to decide.  *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993); *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998).  This case, however, presents a factual dispute:  whether Clow made a misrepresentation of material fact or a materially false statement in his claim to MCIC.  Under Illinois law, which all parties agree applies to this case, "fraud and false swearing by the insured

4

made in the proof of loss will render the policy void if . . . the policy provides for such a result from such conduct." *Folk v. National Ben Franklin Ins. Co.,* 359 N.E.2d 1056, 1057 (Ill. App. Ct. 1976) (citing *Kavooras v. Insurance Co. of Ill.*, 167 Ill. App. 220 (1912); *Tenore v. American & Foreign Ins. Co. of N.Y.*, 256 F.2d 791 (7th Cir. 1958)); *see Lykos v. American Home Ins. Co.*, 609 F.2d 314, 316 (7th Cir. 1979). However, an unintentional or innocent misrepresentation is not enough; the misrepresentation must be willful and intended to deceive and defraud the insurer. *Bloomgren v. Fire Ins. Exchange*, 517 N.E.2d 290, 294 (Ill. App. Ct. 1987) (citing *Weininger v. Metropolitan Fire Ins. Co.,* 195 N.E. 420, 426 (Ill. 1935)). The Policy in this case has a concealment or fraud provision, so if Clow willfully and intentionally concealed or misrepresented a fact in his proof of claim, the Policy will not cover his loss.

The court in *Sentry Insurance v. Rice*, No. 09-3013, 2011 WL 2965799, * 7 (C.D. Ill. July 20, 2011), succinctly summarized how such questions of fact are to be treated under Illinois law:

> "Ordinarily, fraud and false swearing is a question of fact for the jury but it becomes a question of law when the insured's misrepresentations cannot in any way be seen as innocent." *Folk v. National Ben Franklin Ins. Co.,* 45 Ill. App. 3d 595, 597 (1976) (wherein the insured sold equipment after the fire but included the equipment on his proof of loss); *see also Passero v. Allstate Ins. Co.,* 196 Ill. App. 3d 602, 610 (1990); *Lykos,* 609 F.2d at 315. "If some effort is displayed at making an honest valuation of a loss, the court should not find fraud or misrepresentation as a matter of law but should submit the question to the jury." *Fitzgerald v. MFA Mutual Ins. Co.,* 134 Ill. App. 3d 1007, 1010 (1985).

Thus, if a reasonable finder of fact could only come to the conclusion that Clow willfully and intentionally concealed or misrepresented a fact in his proof of claim, the Policy will not cover his loss and MCIC is entitled to summary judgment.

MCIC identifies two basic categories of misrepresentations, which the Court will address in turn: (1) misrepresentations of the value of the items on his proof of loss inventory and (2) misrepresentation of the items he actually lost in the fire.

A.  Misrepresentation of Value

As for the alleged misrepresentation of the value of the items on the personal property inventory, Clow explains that he was instructed by an MCIC agent essentially to record the cost to replace the item if it had to be purchased again on the internet or at a retail store.  He did this by consulting the internet and retail stores.  He did not fully appreciate the difference between replacement cost he was instructed to obtain and ACV.  It appears that the MCIC claims adjustor realized this when she deducted depreciation from the replacement cost figures Clow provided or she assumed when she summarized the claim.  A reasonable jury could certainly find Clow's reporting of replacement costs in the ACV column of his inventory was an honest mistake and not intended to deceive MCIC.

Clow further explains that, as to the items listed on his Schedule B, pursuant to his attorney's instructions he had valued those items as much as twenty times less than they were actually worth.  It seems reasonable that this could innocently explain the discrepancy between the $950 valuation of his personal property listed on his Schedule B and $19,000 of his insurance claim, twenty times his Schedule B valuation.  It may not, however, explain any larger discrepancy that resulted from listing substantially more property on his inventory than he did in his Schedule B.

B.  Misrepresentation of Items

Clow explains that he listed substantially more property on the inventory attached to his insurance claim than he did on his Schedule B for two reasons: (1) he omitted the value of a substantial number of items from his Schedule B estimate of value and (2) he acquired a number of items between filing his Schedule B and filing his insurance claim.

The Court first examines the effect of judicial estoppel on this case.  The doctrine of judicial estoppel prevents a party from adopting a position in one legal proceeding after having

6

taken a contrary position – and prevailed – in another legal proceeding. *Zedner v. United States,* 547 U.S. 489, 504 (2006). For judicial estoppel to apply, the party's later position must be clearly inconsistent with the earlier position, the court must have accepted the earlier position, and accepting the later position must be unfair. *Id*. Whether to apply judicial estoppel is within the discretion of the Court. *Id.* Ordinarily, a debtor who denies owning an asset in a bankruptcy petition is judicially estopped from later claiming ownership of that asset for his own benefit. *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). However, judicial estoppel does not prevent the bankruptcy *estate* from benefitting from the denied asset for the benefit of the debtor's creditors so long as the estate played no part in the wrongful denial of the asset and has not abandoned the asset. *Id.*; *see Parker v. Wendy's Int'l, Inc.,* 365 F.3d 1268, 1272 (11th Cir. 2004); *In re Phelps*, 329 B.R. 904. 906-07 (Bankr. M.D. Ga. 2005).

To the extent Clow is pursuing this litigation in his own name[2] – he is listed as an individual plaintiff in this case – he is bound by his sworn representation in his bankruptcy petition that the personal property he owned on July 26, 2012, that was ultimately destroyed in the fire was worth $950. Clow's representation on Schedule B is contrary to the position he has taken in this case that he owned property worth far more than $950 at the time he filed his bankruptcy petition. The difference in his assessments of value is so vast that it could not be not attributable simply to different valuation methods for different purposes as it was in *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 635 N.E.2d 485 (Ill. App. Ct. 1994). The Bankruptcy Court accepted

---

[2] The Court notes that Clow, individually, does not have an interest in his insurance claim to the extent it is based on property he owned at the time he filed for bankruptcy. The assets upon which that part of his claim is based became part of the bankruptcy estate and will remain so until the Trustee administers or abandons the assets or the insurance claim for their destruction, regardless of whether Clow listed the property as an asset on Schedule B. *See* 11 U.S.C. §§ 541(a)(1) & 554(d); *Parker*, 365 F.3d at 1272. Since the Trustee has not administered or abandoned that claim, only the Trustee has standing to pursue it. *Parker*, 365 F.3d at 1272. However, Clow does have standing to sue individually based on his insurance claim for property he acquired *after* he filed for bankruptcy, which is not part of the bankruptcy estate.

7

Clow's representation, finding that he had no non-exempt property to be distributed to his creditors and discharging his substantial debts. Allowing Clow to receive payment in this case for an insurance claim based on property he did not disclose to the Bankruptcy Court would unfairly allow him a windfall after he deprived his creditors of sums they would have been due in the bankruptcy proceedings. Therefore, judicial estoppel prevents Clow from claiming insurance benefits for himself based on assets he denied owning in his bankruptcy petition. It makes no difference that Clow may have valued his Schedule B assets at $950 because his attorney told him to; the bottom line is that he is stuck with his sworn representation in his bankruptcy proceeding that all the assets he owned at that time were worth $950. The Court further believes no reasonable jury could find Clow acquired in six months through yard sales and gifts additional assets (which Clow cannot even identify with any degree of specificity as to the items or how and when he acquired them) worth nearly $125,000 – more than 132 times the assets he had when he filed his Schedule B – or even worth the ACV of the assets listed in his inventory. Thus, as for Clow's personal claim, a reasonable jury could only find he misrepresented a material fact or made a materially false statement with the intent to deceive or defraud MCIC.

There is no suggestion that the Trustee participated in the false Schedule B that Clow submitted in his bankruptcy petition, so Clow's representations on his Schedule B will not judicially estop the Trustee from a recovery in this case for the benefit of Clow's creditors. The evidence in this case, viewed in Clow's favor, is sufficient for a reasonable jury to conclude that the following property was destroyed in the January 2013 fire: $19,000 in personal property Clow accounted for but undervalued in his Schedule B; items Clow owned when he filed his Schedule B but which he did not account for on that schedule (*e.g.*, furniture, major appliances, a television, a piano, jewelry, tools); and other items Clow obtained at yard sales or as gifts after filing his bankruptcy petition. The Court believes that a reasonable jury could find the ACV of

8

the foregoing items was not far from the ACV of the items on Clow's inventory.  Therefore, it is appropriate for a jury to decide whether Clow made a misrepresentation of a material fact or a materially false statement when he filed his proof of loss. [3]   The Trustee will therefore be allowed to proceed to trial on the estate's claim, although the estate's recovery will be limited to damages associated with the loss of estate property.

IV.   **Conclusion**

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** MCIC's motion for summary judgment on Counts III and IV (Doc. 31).   The motion is **GRANTED** as to Clow's individual claims but **DENIED** as to the Trustee's claims.   The Court further **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:   February 19, 2015**

                              s/ J. Phil Gilbert
                              **J. PHIL GILBERT**
                              **DISTRICT JUDGE**

---

[3]    The parties have not addressed in any depth the question of whether Clow's alleged concealment or fraud in his insurance claim would void the coverage as to a claim by the estate, which did not make any misrepresentation to MCIC.   Should the parties feel this is a relevant question, they may file trial briefs on the issue seven days before the final pretrial conference.

9